UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

| | | |
|---|---|---|
| HIGH ADVENTURE MINISTRIES INC., | ) ) ) ) | |
| Plaintiff | ) ) ) | CIVIL ACTION NO. : 3:17-CV-399-TBR |
| v. | ) ) ) ) | |
| JOHN D. TAYLOE, and STRATEGIC COMMUNICATIONS GROUP, INC., | ) ) ) ) | |
| Defendants. | ) | |

The Plaintiff, HIGH ADVENTURE MINISTRIES, INC., by and through its undersigned

counsel, does hereby sue Defendants, JOHN D. TAYLOE, and STRATEGIC

COMMUNICATIONS GROUP, INC., and states as follows:

**PARTIES, JURISDICTION, AND VENUE**

1.      This is a civil action pursuant to the Lanham Act, 15 U.S.C. § § 1052 et. seq. and

related claims for trademark infringement, trademark dilution, misappropriation of trade

secrets, civil racketeering and declaratory relief, with damages in excess of $75,000.00

exclusive of interest, attorney fees and costs.

2.     Plaintiff HIGH ADVENTURE MINISTRIES, INC.  (hereafter "High Adventure") is a California Domestic Nonprofit Corporation, with a principal place of business located at 2527 Nelson Miller Parkway, Suite 103, Louisville, KY  40223.

3.     High Adventure owns certain federal and common law trademark rights, trade secrets, and other confidential and proprietary business information that exist, and are subject to protection through Plaintiff's headquarters in Louisville, Kentucky.  The violations of these rights and the harm to Plaintiff as described below was specifically directed by these Defendants against the Plaintiff, a Kentucky resident.

4.     Defendant, JOHN D. TAYLOE, is a California citizen and resident, and is the founder and President of Strategic Communications Group, which conducts business across the United States, including the state of Kentucky and whose principal place of business is located at 543 Country Club Drive, Simi Valley, CA 93065.

5.     Defendant, JOHN D. TAYLOE (hereafter "Tayloe"), is a person who, upon information and belief, is a citizen residing at 11816 Maplecrest Street, Moorpark, CA 93021

6.     Defendant STRATEGIC COMMUNICATIONS GROUP is a California Domestic Non-profit corporation with a principal place of business located at 543 Country Club Drive, Suite 7, Simi Valley, CA  93065.

7.     This Court has jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1121 as this matter arises, in part, under the Lanham Act.  In addition, this Court has jurisdiction under 28 U.S.C. § 1338 as an action arising under federal law in trademark.

8.     Venue and personal jurisdiction are proper in this Court based upon the specific torts and other actions undertaken by the Defendants in this judicial district to injure the

2

Plaintiff and injure and infringe the intellectual property rights of the Plaintiff, which is located in Louisville, Kentucky.

9.    Defendants have also purposefully availed themselves of, and violated the intellectual property rights of the Plaintiff in Kentucky, and undertaken specific acts of fraud as described herein directed to injure the Plaintiff through acts committed in Kentucky.

### ATTORNEY'S FEES

10.    Plaintiff has retained the undersigned attorneys, is required to pay them a reasonable fee, and is entitled to recover a reasonable fee from Defendants pursuant to the attorney fees provisions contained in the statutory causes of action alleged below.

### BACKGROUND

### HIGH ADVENTURE MINISTRIES & THE VOICE OF HOPE

11.    High Adventure Ministries was founded in 1972 by the late Rev. George Otis, who was an extraordinary and visionary man, devoted to the Christian faith and the word of God.

12.    George Otis had previously been employed as the Chief Executive Officer of Lear Jet, Inc. and desired to start a ministry that would span the far reaches of the globe and lead people to the Christian faith.

13.    In the early years of High Adventure, Mr. Otis often led people on tours of Israel as part of the activities of the Ministry.  In 1979, Mr. Otis had the vision of creating a radio station to broadcast into the Middle East and The VOICE OF HOPE was launched. Through hard work and perseverance, High Adventure began broadcasting the Voice of Hope radio programs throughout the Middle East from a radio tower in southern Lebanon under the protection of the Israeli Defense Forces.

14.     The Voice of Hope was a successful radio program, and High Adventure augmented the radio programming with other printed publications and Christian outreach efforts throughout the World, and primarily in North America and the Middle East.

15.     In the year 2000, due to civil unrest and terrorist activity, Israel gave up the land in Southern Lebanon they had previously protected, the Voice of Hope radio station tower was forced off the air as a traditional radio station, and the Voice of Hope radio relocated.

16.     Subsequent to the attack, High Adventure continued the Voice of Hope, transmitting via satellite.  High Adventure has continued its Christian broadcasting under the Voice of Hope banner, consistently providing quality programming and Christian outreach.

17.     Subsequent to the retirement of George Otis in 1999, Jackie Yockey took over as the new CEO of High Adventure and has remained in that position since that time.

18.     In 2001, High Adventure moved its corporate office from California to Louisville, Kentucky, where it still remains.

## DEFENDANT JOHN D. TAYLOE

19.     John D. Tayloe is a man of considerable talent, but a man of inadequate integrity. Tayloe became associated with High Adventure by virtue of the fact that he was the son-in-law of the founder George Otis.

20.     Tayloe worked for High Adventure beginning in 1986 as a radio announcer, and ultimately served as Executive Vice-President of the company and Corporate Director.

21.     Through his position at High Adventure, Tayloe had access to all of the confidential material of the company, including detailed donor lists and operating information about the Ministry.

22.     Despite Tayloe's talents, he was a generally disruptive force at High Adventure and attempted to sow seeds of discord pertaining to the management of the company by Mr. Otis.

23.     In September 1996, the Board of Directors of High Adventure, led by Mr. Otis, fired Tayloe and disassociated him from any further involvement in the Ministry.

24.     A central tenant of the Christian faith is power of personal redemption and forgiveness.  Despite considerable harm to the Ministry by Tayloe, he was later forgiven and allowed to come back to High Adventure.  However, Tayloe once again exhibited disruptive behavior and was again fired by High Adventure's Board of Directors.

25.     In an extraordinary commitment to the Christian principles of love and forgiveness, Dr. Otis and the High Adventure Board of Directors allowed Tayloe to come back to High Adventure for a third time in 1998.  However, Tayloe demonstrated he had not really changed his ways and was soon fired and sent away for a third and final time March 24, 1999.

## DEFENDANT STRATEGIC COMMUNICATIONS GROUP, INC.

26.     At some point in 1998, along the period(s) of time of Tayloe's firings and re-hirings at High Adventure, Tayloe founded and created Strategic Communications Group, Inc.

27.     Strategic Communication Group, Inc., upon information and belief, operates radio stations in the vicinity of Simi Valley, CA including country music stations as well as Christian broadcasting.

28.     According to information currently displayed on the Internet Website for Strategic Communications Group, Tayloe chose in 2014 to embark on a path of establishing a broadcast radio station in the Middle East that would pretend to be the successor to High Adventure's Voice of Hope.

29.     Tayloe and Strategic Communications Group (hereafter "Strategic") have attempted to use the imagery and name of "Voice of Hope" to create a false association with the work of the late George Otis and the success of High Adventure as a fundraising mechanism.

30.     Defendant Strategic claims to be involved in international gospel radio broadcasting to "honor the original vision of George Otis," the founder of Plaintiff High Adventure Ministries and Voice of Hope.

31.     Defendant Strategic acquired the domain name of "voiceofhope" and promotes, markets, and advertises its radio stations and other services through traditional commerce channels and at the website www.voiceofhope.com.

### PLAINTIFF'S DEVELOPMENT OF THE VOICE OF HOPE MARK

32.     The Plaintiff's VOICE OF HOPE mark was first used in interstate commerce by Plaintiff to advertise, promote, and market their ministry in the topic of religion and religious education.

33.     The VOICE OF HOPE mark was first used in interstate commerce by Plaintiff on or about December 1, 1979.

34.     Plaintiff applied for federal registration of VOICE OF HOPE as a trademark with the United States Patent and Trademark Office on or about June 22, 2015.

35.     On November 22, 2016, the United States Patent and Trademark Office issued Trademark Registration No. 5,084,707 mark in International Class 016 and Prior U.S. Classes 002, 005, 022, 023, 029, 037, 038, and 050. A copy of U.S. Trademark Registration No. 5,084,707 is attached as Exhibit "A."

36.     The VOICE OF HOPE mark connotes the goodwill and reputation associated with the Plaintiff's ministries and services under Federal and state common law including the law of Kentucky.   The Plaintiff is the registered owner of the trademark registered with the United States Patent and Trademark Office ("USPTO") for VOICE OF HOPE (the "VOICE OF HOPE" mark).

37.     Plaintiff currently, and at all times material hereto, markets and promotes its ministry under the VOICE OF HOPE mark to private donors and institutional associations throughout the United States and the Middle East in interstate commerce.

38.     Plaintiff currently, and at all times material hereto, promotes and advertises its services at its website, www.highadventure.org.

39.     Plaintiff has expended extensive time, energy, and funds in promoting, marketing, and advertising its services under the VOICE OF HOPE mark.

40.     The VOICE OF HOPE mark has become distinctive and well known in the marketplace.

41.     The VOICE OF HOPE mark connotes Plaintiff's goodwill and reputation to Christians as well as the general population.

7

## DEFENDANTS' MISAPPROPRIATION
## VIA MULTIPLE BUSINESS CHANNELS

42.     Defendants Tayloe and Strategic have not, at any time, had permission to use, for their own purposes, the Plaintiff's trademark, donor lists, likeness, history or other property.

43.     Beginning on or about March 24, 1998, Defendants improperly acquired and began to operate the website <voiceofhope.com>.

44.     Defendants' unauthorized use of Plaintiff's VOICE OF HOPE mark allows traffic on search engines using the mark as a search term to be led to Defendants' website.

45.     Defendants continue to promote their services to consumers within this jurisdiction and in interstate commerce by appropriating Plaintiff's VOICE OF HOPE mark and other proprietary information.

46.     Defendants' use of the VOICE OF HOPE mark owned by the Plaintiff has caused, and is continuing to cause, actual confusion among consumers as to the source or sponsorship of Defendants' services.

47.     Defendants continue to provide services to consumers within this jurisdiction and in interstate commerce by appropriating Plaintiff's VOICE OF HOPE mark and other proprietary information.

48.     Plaintiff has never authorized Defendants to use its VOICE OF HOPE mark for any purpose.

49.     Defendants' use of the VOICE OF HOPE mark is likely to cause confusion and mistake as to the origin of the Defendants' services and the relationship between the Plaintiff and the Defendants.

50.     If Plaintiff is not able to protect its VOICE OF HOPE mark from infringers and unauthorized use, it would be unable to effectively market those services to new or potential consumers of ministry services.

51.     The Defendants' unauthorized use and appropriation of the Plaintiff's mark, history and likeness creates a false impression to those individuals who are duped into believing that the Defendants are the continuation of the ministry started by George Otis, and the use of a fraudulent means to promote a ministry is morally wrong and could be damaging to the goodwill created over the years by the Plaintiff.

52.     Plaintiff has been, and continues to be, irreparably damaged by Defendants' unauthorized use of the VOICE OF HOPE mark, and false representations concerning an association between the Defendants and the Plaintiff's ministry.

## DEFENDANTS WILLFULLY IGNORED PLAINTIFF'S DEMAND TO CEASE AND DESIST

53.     Via a letter, dated May 17, 2017, Plaintiff demanded that Defendant Tayloe cease and desist from using Plaintiff's VOICE OF HOPE mark, copyrighted material, and any other proprietary information, trade secrets, or any other legend from any form of information obtained from the Plaintiff. Defendants were illegally utilizing a web site and internet domain name titled www.voiceofhope.com.

54.     Plaintiff further demanded that Defendant Tayloe cease and desist from using Plaintiff's VOICE OF HOPE mark, copyrighted material, and any other proprietary information, trade secrets, or any other legend from any form of information obtained from the Plaintiff in soliciting donations from long-time donors of Plaintiff while misleading them to believe Defendants were affiliated with Plaintiff and/or the VOICE OF HOPE mark.

55.      Defendant Tayloe responded by letter with vague promises, but has continued to
pursue the same improper path, undeterred by the Plaintiff's cease and desist letter.

56.      The Defendants have shown a continued reckless disregard for the Plaintiff's
intellectual property rights as well as the rule of law and a total disregard and contempt
for the Christian public, and a total contempt for teachings of Jesus Christ by their
continued scam.

57.      Plaintiff was forced to bring an action against Defendants with the National
Arbitration Forum under the Uniform Domain Name Registration Policy of the Internet
Company for Assigned Names and Numbers ("ICANN"). On June 28, 2017 Plaintiff
filed the ICANN action to restrict the Defendants from using the term VOICE OF HOPE
in relation to Defendants' website www.voiceofhope.com, newsletters and donation
solicitations.

58.      Defendants' willful and malicious actions continue, causing irreparable injury to
the Plaintiff, and will not cease unless ordered by this Court.

### CLAIMS FOR RELIEF

### COUNT I - FALSE ADVERTISING
### IN VIOLATION OF LANHAM ACT 15 U.S.C. § 1125 (a)
### FALSE OR MISLEADING ADVERTISING STATEMENTS

59.      Plaintiff re-alleges and incorporates by reference paragraphs one (1) through fifty-
five (58) as if fully set forth herein.

60.      Beginning March 24, 1998, Defendants began operating the website
www.voiceofhope.com.

61.     Among other things, Defendants have attempted to mislead the general public including potential donors and supporters in into thinking that their company is affiliated with and therefore authorized by Plaintiff's founder, George Otis, Sr.

62.     Specifically, the following false or misleading statements were posted on the aforementioned website created and/or controlled and authorized by Defendants, accessible through the internet, and were made for the purpose of influencing the general public and potential donors and supporters in favor of Defendants' services:

    a.  Their broadcast stations: "Voice of Hope Americas," "Voice of Hope Africa," and "Voice of Hope Middle East," all include Plaintiff's VOICE OF HOPE mark.

    b.  That DEFENDANTS were re-establishing George Otis' VOICE OF HOPE with their station in Israel.

    c.  That donations sent to DEFENDANTS would be used to advance the mission of VOICE OF HOPE.

63.     These false statements have the capacity to deceive consumers and will have a material effect on purchasing and/or charitable giving decisions. *See* Exhibit "B," Defendants' website stating they are "grateful" for donations through wills and estate gifts.

64.     On information and belief, those false statements have been used to promote Defendants' goods and services in interstate commerce.

65.     As a proximate cause of Defendants' actions, Plaintiff has suffered and will continue to suffer injury based on, among other things, loss of good will and damage to its business reputation and relationships.

66.     Specifically, the Defendants have falsely communicated to the public the suggestion that the Voice of Hope Christian broadcasts have been absent for seventeen years and only re-established by the Defendants, while the Defendants were well aware that the Plaintiff has continued the Voice of Hope broadcasts consistently over those same years.

67.     Plaintiff will suffer irreparable injury unless Defendants are enjoined from making false and/or misleading statements in its advertising material and are forced to disgorge all revenue extracted through its continuing pattern of false advertising.

**COUNT II - MISAPPROPRIATION OF TRADE SECRETS**

68.     Plaintiff re-alleges and incorporates by reference paragraphs one (1) through sixty-seven (67) as if fully set forth herein.

69.     Plaintiff's specialized proprietary donor lists constitute trade secrets, providing Plaintiff with a competitive advantage over other charitable interests in the same focus area as Plaintiff.

70.     By virtue of his relationship with Plaintiff, Defendant Tayloe, on behalf of himself and Strategic, gained knowledge of and physical access to Plaintiff's trade secrets and confidential information and specialized donor lists.

71.     The trade secrets and confidential information derive independent economic value from not being generally known to, and not being readily ascertainable by proper means by other persons or interests who can obtain economic value from their use.

72.     Plaintiff has taken reasonable efforts to maintain the secrecy of its trade secrets and confidential information through controlling access to such information to strictly those within the company that have a significant position of responsibility.

73.      Defendants had the duty to maintain the confidentiality of the Plaintiff's trade secrets and confidential information and were permitted to use to a limited extent such information only for the purposes of benefiting High Adventure and its programs.

74.      Defendant Tayloe has disclosed and both Defendants are using the Plaintiff's trade secrets and confidential information in operation of a scam ministry to compete directly with the Plaintiff in violation of the Uniform Trade Secrets Act of Kentucky.

75.      Because the Defendants will continue to disclose and use the Plaintiff's trade secrets and confidential information in operation of a business in the same industry in the future if not restrained by the Court, Plaintiff has no adequate remedy at law for the damages Defendants are causing.

76.      The actions of the Defendants are irreparably harming Plaintiff because disclosure of Plaintiff's trade secrets and confidential information can destroy Plaintiff's business and good will.

77.      The Defendants have misappropriated the Plaintiff's trade secrets and confidential information in bad faith.

78.      The Defendants actions cast the Plaintiff in a bad light and are generally disparaging and thus damaging to the Christian faith.

79.      The Plaintiff is entitled to appropriate compensation from the Defendants for violation of its trade secrets.

## COUNT III - FEDERAL UNFAIR COMPETITION—PASSING OFF IN VIOLATION OF LANHAM ACT 15 U.S.C. § 1125 (a)

80.      Plaintiff re-alleges and incorporates by reference paragraphs one (1) through seventy-nine (79) as if fully set forth herein.

81.     Defendants have knowingly used the VOICE OF HOPE mark and Plaintiff's protected material on their website and within multiple business channels in connection with the sale of services in the same industry as Plaintiff.

82.     Defendants' use of the VOICE OF HOPE mark is likely to cause, has caused, and will continue to cause, confusion among customers as to the origin, sponsorship, or approval of Defendants' services.

83.     Defendants' actions are in violation of 15 U.S.C. § 1125 (a) in that Defendants have used and are using, in relation to commercial activities, a false designation or origin, or a false or misleading description which is likely to cause confusion, and to cause mistake, and to deceive, as to the affiliation, connection, or association of Defendants with Plaintiff as to the origin, sponsorship, or approval of Defendants' commercial activities.

84.     Plaintiff has suffered, and will continue to suffer, irreparable damage resulting from the acts of unfair competition by Defendants, and because these acts are continuing, Plaintiff will suffer additional irreparable damage unless Defendants are enjoined by the Court from continuing those acts, which constitute unfair competition.

85.     Defendants' acts of unfair competition are willful and this is an exceptional case within the meaning of 15 U.S.C. § 1117 (a).

86.     The Defendants actions cast the Plaintiff in a bad light and are generally disparaging and harmful to the Plaintiff's ministry by false association with the Defendants' scam ministry.

87.     The Defendants actions are also generally damaging to the Christian faith and general public who are deceived.

88.     The Plaintiff is entitled to appropriate compensation from the Defendants for unfair competition including enhanced damages as this is an exceptional case.

## COUNT IV - COMMON LAW UNFAIR COMPETITION AND TRADEMARK CLAIMS

89.     Plaintiff re-alleges and incorporates by reference paragraphs one (1) through eighty-eight (88) as if fully set forth herein.

90.     Continuously since on or about December 1, 1979, Plaintiff has used the VOICE OF HOPE mark to distinguish its service by among other things, prominently displaying the mark on its letterhead, bills, advertising, website pages, and in periodicals distributed throughout the United States and abroad, and by broadcast media throughout the World.

91.     Plaintiff's VOICE OF HOPE mark is inherently distinctive, or has acquired secondary meaning to Christians and ministry supporters, and those who are interested in furthering the teachings of Jesus Christ and bringing the Word of God to others throughout the World.

92.     Defendants have adopted Plaintiff's VOICE OF HOPE mark to promote their services via the Internet and various other business channels.

93.     The acts and conduct of Defendants, as alleged herein, constitute unfair competition and trademark infringement and dilution pursuant to the common law of the Commonwealth of Kentucky, and Defendants have engaged in acts of unfair competition as alleged above in willful, wanton, and malicious manner.

94.     By reason of the Defendants' acts alleged herein, Plaintiff has suffered, and will continue to suffer, damages to its business, reputation, and goodwill, and is entitled to recover damages for this injury, including the revenue Plaintiff would have generated but

for Defendants' acts, together with the ill-gotten gains of Defendants, and damages for its

willfulness.

95.     The conduct of the Defendants will continue, to the irreparable prejudice of

Plaintiff, unless Defendants are restrained and enjoined from further unlawful conduct.

96.     It would be difficult to ascertain the amount of compensation necessary to

adequately remedy Defendants' continuing acts.

97.     Plaintiff's remedy at law is, therefore, inadequate to fully compensate it for the

injuries it will suffer in the future for the continued acts of infringement alleged herein.

98.     The Plaintiff seeks both compensatory and injunctive relief to the fullest extent

possible under the law for the damage done by the Defendants through their improper

acts noted above.

## COUNT V - INFRINGEMENT OF A FEDERALLY REGISTERED
## TRADEMARK 15 U.S.C. § 1114

99.     Plaintiff re-alleges and incorporates by reference paragraphs one (1) through

ninety-eight (98) as if fully set forth herein.

100.    Plaintiff's registration of its VOICE OF HOPE mark is conclusive evidence of the

validity of the mark and of Plaintiff's exclusive ownership of and right to use its VOICE

OF HOPE mark.

101.    Defendants' wrongful use of the registered VOICE OF HOPE mark in

conjunction with the promotion of its services in the same trade industry as the Plaintiff is

likely to cause consumer confusion as to source, sponsorship, affiliation, or authorization

by Plaintiff, or alternatively, to destroy the origin-identifying function of Plaintiff's

VOICE OF HOPE mark.

102.    As a proximate result of Defendants' actions, Plaintiff has suffered, and will continue to suffer, damages to its business, reputation, and goodwill, and is entitled to recover damages for this injury.

103.    The conduct of the Defendants will continue, to the irreparable prejudice of Plaintiff, unless Defendants are restrained and enjoined from further unlawful conduct.

104.    It would be difficult to ascertain the amount of compensation necessary to adequately remedy Defendants' continuing acts.

105.    Plaintiff's remedy at law is, therefore, inadequate to fully compensate it for the injuries it will suffer in the future for the continued acts of infringement alleged herein.

106.    The foregoing acts of infringement by Defendants in appropriating the VOICE OF HOPE mark have been and continue to be deliberate, willful, and wanton, making this an exceptional case within the meaning of 15 U.S.C. § 1117.

107.    Plaintiff is entitled to a preliminary and permanent injunction against Defendants, as well as all other monetary remedies available under the Lanham Act, including, but not limited to, compensatory damages, treble damages, disgorgement of profits, costs, and attorney's fees.

## COUNT VI - DILUTION OF A FEDERALLY REGISTERED TRADEMARK
## 15 U.S.C. § 1125 (C)

108.    Plaintiff re-alleges and incorporates by reference paragraphs one (1) through one-hundred and eight (108) as if fully set forth herein.

109.    The VOICE OF HOPE mark has become distinctive of the services offered by the Plaintiff by virtue of longstanding use, extensive advertising, and publicity, widespread recognition by the Christian public, and has been consistently used in connection with the Plaintiff's ministry.

110.     The Defendants' knowing, willful, and malicious unauthorized use of the VOICE OF HOPE mark is diluting the distinctive quality, and damaging the brand by association with the Defendants' scam ministry.

111.     The Defendants' actions are knowing, willful, and malicious, done intentionally for the purpose of trading on Plaintiff's reputation, causing dilution of the VOICE OF HOPE mark.

112.     The foregoing acts of infringement by Defendants in appropriating the VOICE OF HOPE mark have been, and continue to be deliberate, willful, and wanton, making this an exception case within the meaning of 15 U.S.C. § 1117.

113.     As a proximate result of Defendants' actions, Plaintiff has suffered, and will continue to suffer, damages to its business, reputation, and goodwill, and is entitled to recover damages for this injury.

114.     The conduct of the Defendants will continue, to the irreparable prejudice, of Plaintiff, unless Defendants are restrained and enjoined from further unlawful conduct.

115.     It would be difficult to ascertain the amount of compensation necessary to adequately remedy Defendants' continuing acts.

116.     Plaintiff's remedy at law is, therefore, inadequate to compensate it for the injuries it will suffer in the future for the continued acts of infringement alleged herein.

117.     The Defendants actions dilute and disparage the Plaintiff's ministry and are generally disparaging and thus damaging to the Christian faith.

118.     The Plaintiff is entitled to appropriate compensation from the Defendants for violation of its rights and is entitled to exceptional damages in order to deter the on-going tortious actions of the Defendants.

## COUNT VII - DECLARATORY JUDGMENT

119.     Plaintiff re-alleges and incorporates by reference paragraphs one (1) through one-hundred nineteen (119) as if fully set forth herein.

120.     Plaintiff sues Defendants for Declaratory Judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

121.     There exists a substantial controversy between the Plaintiff and Defendants, each asserting adverse legal interests to the VOICE OF HOPE mark and the legality of Plaintiff's attempts to enforce those legal interests to warrant the issuance of a declaratory judgment.

122.     Defendants' wrongful use of the registered VOICE OF HOPE mark in conjunction with the promotion of their service in the same trade industry as the Plaintiff is likely to cause consumer confusion as to source, sponsorship, affiliation, or authorization by Plaintiff, or alternatively, to destroy the origin-identifying function of Plaintiff's VOICE OF HOPE mark.

123.     Plaintiff asks the court to determine that:

a.   The VOICE OF HOPE mark is exclusive to Plaintiff and valid;

b.   Defendants have willfully, maliciously, and wantonly with disregard, violated the Lanham Act and misappropriated Plaintiff's VOICE OF HOPE mark;

c.   Defendants have acted in bad faith to attempt to appropriate and use the VOICE OF HOPE mark.

## COUNT VIII
## CIVIL RICO ACT CLAIM
## 18 U.S.C. §§ 1961 et seq.

124.     Plaintiff re-alleges and incorporates by reference paragraphs one (1) through one-hundred twenty-three (123) as if fully set forth herein.

125.     Since at least 1998, Defendants have made representations to the public, through their website and through Defendants' various radio stations, and a series of publications, that they are "Voice of Hope,"; that they are the successors in interest to the Voice of Hope Ministry started by George Otis; and that any donations made to them will be used to "directly support the broadcasts of Voice of Hope radio."

126.     Since at least 2014, Defendants have made a series of representations to Israeli government officials that they are owners of "Voice of Hope" and the successors in interest to the Voice of Hope ministry founded by George Otis.   In part, through these representations Defendants were able to secure Israel's only Christian radio station under the Voice of Hope name.

127.     Further, through its monthly newsletters, Defendants have repeatedly identified themselves as the leaders of "Voice of Hope" and misled the readers into believing they were the successors in interest to the Voice of Hope Ministry started by George Otis. These newsletters have repeatedly and continuously included solicitations for donations to further the efforts of "Voice of Hope" radio.

128.     Additionally, Defendants have sent direct solicitations to former donors of High Adventure, the true owner of the VOICE OF HOPE mark, representing that Defendants are operating as "Voice of Hope" domestically and abroad.

129.     Defendants' systematic and continuous conduct was made with the obvious and
direct goal of benefitting their enterprise and their own economic gain at the expense of
Plaintiff's ministry.

130.     Defendants should be liable for Plaintiff's lost revenue and tarnished reputation.

131.     Defendants' actions misled the Israeli government, as well as many individual
donors, that it was in fact the rightful VOICE OF HOPE owner, when in fact it was
fraudulently operating under that name.  Since Defendants diverted donations from
Plaintiff's ministry, it was reasonably foreseeable to Defendants that their fraudulent
representations would cause Plaintiff at least $3.5 million in damages.

132.     Defendants should also be liable for punitive damages.  Defendants acted with
malice toward Plaintiff, and with a reckless disregard to its rights and interests.
Defendants tailored their image with the express purpose of obfuscating the ownership of
VOICE OF HOPE.  Over the course of nearly two decades and more aggressively in the
recent two years, Defendants participated in a systematic fraud aimed at stifling
Plaintiff's ministry's revenue streams that had been cultivated and developed for over
four decades.  Defendants' fraud damaged Plaintiff's reputation and image, which had
been carefully crafted through decades of ministry and other efforts.

133.     Making fraudulent representations for financial gain is reprehensible.  The degree
of reprehensibility of such fraudulent activities is exponentially greater when that
financial gain is gotten at the expense of a private ministry.  Other actors, intent on
snatching the revenue of lawful organizations, should be deterred from employing similar
tactics to defraud those entities.

134.     High Adventure is a "person" within the meaning of RICO, 18 U.S.C. §§ 1961 (3) and 1964 (c).

135.     Strategic, Tayloe, and Strategic officers, agents, and employees are persons within the meaning of 18 U.S.C. §§ 1961 (3) and 1962 (c).

136.     Strategic is the enterprise within the meaning of 18 U.S.C. §§ 1961 (4) and 1962 (c).  At all relevant times, this enterprise was engaged in, and its activities affected, interstate and foreign commerce, within the meaning of RICO, 18 U.S.C. § 1962 (c).

137.     At all relevant times, Tayloe and the other Conspirators associated with this enterprise conducted or participated, directly or indirectly, in the conduct of the enterprise's affairs through a "pattern of racketeering activity" within the meaning of RICO, 18 U.S.C. § 1961(5), in violation of RICO, 18 U.S.C. § 1962 (c).

138.     This aforementioned pattern of racketeering activity included a series of specific newsletters and direct mail solicitations, as well as potential telephonic solicitations directed to perpetrating the aforementioned fraud.

139.     Specifically, at all relevant times, Tayloe and the other Conspirators engaged in "racketeering activity" within the meaning of 18 U.S.C. § 1961 (1) by engaging in the acts set forth above.  The acts set forth above constitute a violation of one or more of the aforementioned statutes.  Tayloe and the other Conspirators each committed and/or aided and abetted the commission of two or more of these acts of racketeering activity.

140.     The acts of racketeering activity referred to in the previous paragraphs constituted a "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1961 (5).  The acts alleged were related to each other by virtue of common participants, a common victim (High Adventure), a common method of commission, and the common purpose and

common result of diverting High Adventure of revenue from donors and enriching the Conspirators at High Adventure's expense while concealing the Conspirators' fraudulent activities.  The fraudulent scheme is continuing presently and, upon information and belief, may have begun in 2014.

141.     The Plaintiff is entitled to appropriate compensation from the Defendants for civil racketeering, and such damages are respectfully requested.

### REQUEST FOR JURY TRIAL

142.     Plaintiff requests a jury trial of all matters so triable as a matter of right.

### PRAYER FOR RELIEF

WHEREFORE, for all of the foregoing reasons, Plaintiff, HIGH ADVENTURE MINISTRIES, request this Honorable Court grant relief in its favor in the following manner:

a.  Defendants and their agents, servants, employees, and those people in active concert or participation with them be preliminary and permanently enjoined from infringing on Plaintiff's VOICE OF HOPE mark, or creating any illusion of a false association with the Plaintiff;

b.  Be awarded all other monetary remedies available under 15 U.S.C. §§ 1125 *et seq.* (the Lanham Act) and 18 U.S.C. §§ 1961 *et seq.* and common law, including but not limited to, penalties and fines, compensatory damages, treble damages, disgorgement of profits, interest, costs and attorney's fees as legally permitted by each count respectively.

c.  Declare that:

   i.  The VOICE OF HOPE mark is exclusive to Plaintiff and valid;

ii.   Defendants have willfully, maliciously, and wantonly with disregard, violated the Lanham Act and misappropriated Plaintiff's VOICE OF HOPE mark;

iii.   Plaintiff did not give license to Defendants to use their VOICE OF HOPE mark nor its copyrighted material; and

d.   compensatory damages in an amount not now known, but believed to be in excess of $3.5 million, trebled pursuant to RICO;

e.   punitive damages in an amount to be determined at trial;

f.   awarding High Adventure the costs, expenses, and attorney fees incurred in prosecuting this action, pursuant to 18 U.S.C. § 1964 (c)

g.   such other and further relief as this Honorable Court deems just and proper.

Respectfully Submitted,


s/Cheryl R. Winn
Cheryl R. Winn, Esq.
**Waters Law Group, PLLC**
12802 Towne Park Way
Suite 200
Louisville, KY 40243
Telephone: (502) 425-2424
Facsimile: (502) 425-9724
Email: crwinn@waterslawgroup.com

*Counsel for Plaintiff,*
*High Adventure Ministries, Inc.*