UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE
CIVIL ACTION NO. 3:17-cv-00399

HIGH ADVENTURE MINISTRIES, INC.,                                           PLAINTIFF

v.

JOHN D. TAYLOE, et al.,                                           DEFENDANTS

**Memorandum Opinion & Order**

This matter comes before the Court upon Motion by Defendants John Tayloe and Strategic Communications Group, Inc. to dismiss this action pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(5). [DN 11.] This matter is ripe for adjudication and, for the reasons that follow, **IT IS HEREBY ORDERED** that Defendants' Motion, [DN 11], is **GRANTED.**

**A. Background**

Plaintiff High Adventure Ministries, Inc., ("High Adventure"), "is a California Domestic Nonprofit Corporation, with a principal place of business located" in Louisville, Kentucky. [DN 1, at 2.][1] According to its website, the company was founded in 1973 by George Otis ("Otis"). [www.highadventure.org.] Otis has since passed away and Jackie Yockey, ("Yockey"), is now the President and Chief Executive Officer of High Adventure. [*Id.*] According to her Bio on the company's website, Yockey "has established a radio studio that is sending the message of the Gospel of Jesus Christ throughout Israel and around the world from Jerusalem." [*Id.*] Yockey's Bio further notes that, in addition to the radio station, High Adventure has three internet

---

[1] High Adventure's corporate offices were previously located in California, but those offices were moved to Louisville in 2001.

1

television stations and provides radios to people across the globe to further spread its religious message. [*Id.*]

John Tayloe, ("Tayloe"), was the son-in-law of High Adventure's founder, George Otis. [DN 1, at 4.] Tayloe began his career with High Adventure "in 1986 as a radio announcer, and ultimately served as Executive Vice President of the company and Corporate Director." [*Id.*] According to High Adventure's Complaint, by virtue of "his position at High Adventure, Tayloe had access to all of the confidential material of the company, including detailed donor lists and operating information" about the company. [*Id.* at 4-5.] Due to internal "discord" concerning the manner and direction of the management of High Adventure, Tayloe was fired from the company in 1996. [*Id.* at 5.] High Adventure brought Tayloe back into the fold soon thereafter, but he was again fired. [*Id.*] In 1998, High Adventure hired Tayloe a third time, but fired him again in 1999. [*Id.*]

According to High Adventure's Complaint, Tayloe incorporated Defendant company Strategic Communications Group, Inc., ("SCG"), "[a]t some point in 1998." [*Id.*] SCG "operates radio stations in the vicinity of Simi Valley, [California,] including country music stations as well as Christian broadcasting." [*Id.* at 6.] SCG apparently has a similar company vision as Otis had for High Adventure: namely, the establishment and operation of radio stations in the Middle East to spread a religious message. [*Id.*] High Adventure asserts that "Tayloe and [SCG] have attempted to use the imagery and name of 'Voice of Hope' to create a false association with the work of the late George Otis and the success of High Adventure as a fundraising mechanism." [*Id.*] According to High Adventure's Complaint, the name "Voice of Hope" was the original name given to the radio program Otis created in the Middle East in 1979, and which operated there until 2000, when Voice of Hope radio was forced to relocate. [*Id.* at 3-4.] High Adventure

asserts that SCG "claims to be involved in international gospel radio broadcasting to 'honor the original vision of George Otis,' the founder of Plaintiff High Adventure Ministries and Voice of Hope," and that SCG "acquired the domain name of 'voiceofhope' and promotes, markets, and advertises its radio stations and other services through traditional commerce channels and at the website www.voiceofhope.com. [*Id.* at 6.]

On July 6, 2017, High Adventure filed the instant suit asserting the following claims: (1) false advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a) False or Misleading Advertising Statements; (2) misappropriation of trade secrets; (3) federal unfair competition – passing off in violation of the Lanham Act, 15 U.S.C. § 1125(a); (4) common law unfair competition and trademark claims; (5) infringement of a federally registered trademark, 15 U.S.C. § 1114; (6) dilution of a federally registered trademark, 15 U.S.C. § 1125(c); (7) a declaratory judgment; and (8) a civil RICO Act claim, 18 U.S.C. §§ 1961, *et seq.* [*See id.* at 10-23.] On November 28, 2017, Tayloe and SCG, (collectively, "Defendants"), filed the instant Motion to dismiss all claims against them (a) under Fed. R. Civ. P. 12(b)(5) for insufficient service of process, and (b) under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction over both Tayloe and SCG. [DN 11, at 1.] High Adventure filed its Response on January 5, 2018, [DN 14], and Defendants filed their Reply on January 19. [DN 16.] The Court will now consider the merits of Defendants' arguments.

## B. Discussion

### 1. Personal Jurisdiction

In the instant Motion, Defendants assert that this Court, located in the Western District of Kentucky, lacks personal jurisdiction over them. [*See generally* DN 11.] In Defendants' analysis, they argue that this Court lacks both specific and general jurisdiction over them and,

consequently, the Court must dismiss this action. Conversely, High Adventure counters that (a) this Court possesses specific jurisdiction over Defendants because this case arises out of Defendants' contacts with Kentucky, and (b) this Court possesses personal jurisdiction pursuant to 18 U.S.C. § 1965(b), as this is a civil RICO case.

### i. Legal Background

"Where a federal court's subject matter jurisdiction over a case stems from the existence of a federal question, personal jurisdiction over a defendant exists 'if the defendant is amenable to service of process under the [forum] state's long-arm statute and if the exercise of personal jurisdiction would not deny the defendant[] due process.'" *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002) (quoting *Michigan Coal. of Radioactive Mat. Users, Inc. v. Griepentrog*, 954 F.2d 1174, 1176 (6th Cir. 1992)). "In response to a motion to dismiss, the plaintiff may not stand on his pleadings, but must show the specific facts demonstrating that the court has jurisdiction." *Miller v. AXA Winterthur Ins. Co.*, 694 F.3d 675, 678 (6th Cir. 2012) (citing *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991)). However, "[i]n order to defeat the motion to dismiss, the plaintiff's affidavit(s) must make only a *prima facie* showing." *Id.* (citing *Theunissen*, 935 F.2d at 1458). Of course, "[t]he pleadings and affidavits are viewed in the light most favorable to the plaintiff." *Id.* (citing *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 153 (6th Cir. 1997)).

In analyzing the question of personal jurisdiction, there are two main "types," which are (1) general jurisdiction, and (2) specific jurisdiction. *Id.* (citing *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549-50 (6th Cir. 2007)). "General jurisdiction depends on continuous and systematic contact with the forum state, so that the courts may exercise jurisdiction over any claims a plaintiff may bring against the defendant." *Id.* at 678-79 (citing

*Kerry Steel*, 106 F.3d at 149). Conversely, specific jurisdiction "grants jurisdiction only to the extent that a claim arises out of or relates to a defendant's contacts in the forum state." *Id.* (citing *Kerry Steel*, 106 F.3d at 149). High Adventure has not alleged or otherwise argued that this Court possesses general jurisdiction over Defendants and so the Court will not analyze the question of general jurisdiction. Instead, High Adventure has claimed that this Court possesses personal jurisdiction (a) under the rule of specific jurisdiction, and (b) under 18 U.S.C. § 1965(b). The Court will analyze each of these arguments in turn.

### ii. Analysis

One of the two arguments advanced by Defendants is that this Court does not possess specific jurisdiction over them. [DN 11, at 9.] The concept of specific jurisdiction relates to the "[a]djudicatory authority" of a court where "the suit 'aris[es] out of or relate[s] to the defendant's contacts with the forum….'" *Daimler AG v. Bauman*, 571 U.S. 117, 134 S. Ct. 746, 754 (2014) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)). As the Supreme Court has stated, "specific jurisdiction has become the centerpiece of modern jurisdiction theory…." *Id.* at 755.

There are "three criteria…for determining the…outerlimits of in personam jurisdiction based on a single act." *Southern Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968). These three criteria are:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Beydoun v. Wataniya Restaurants Holding, Q.S.C.*, 768 F.3d 499, 505 (6th Cir. 2014) (quoting *Southern Mach.*, 401 F.2d at 381). Applied to the present case, this means that in order for this

Court to possess specific jurisdiction over Defendants, they must have purposefully availed themselves of the privilege of acting in Kentucky or have caused a consequence in Kentucky; the action filed by High Adventure must arise from Defendants' activities in Kentucky, and Defendants' actions must have a "substantial enough connection" with Kentucky in order for this Court to determine that exercising personal jurisdiction over both Tayloe and SCG would be "reasonable." *See id.*

As the Sixth Circuit Court of Appeals has explained with respect to the first prong, "[p]urposeful availment…is present where the defendant's contacts with the forum state proximately result from actions by the defendant *himself* that create a substantial connection with the forum [s]tate, and where the defendant's conduct and connection with the forum are such that he should reasonably anticipate being haled into court there." *Id.* at 505-06 (internal citations omitted). "In the Sixth Circuit, the emphasis in the purposeful availment inquiry is whether the defendant has engaged in some overt actions connecting the defendant with the forum state." *Fortis Corp. Ins. v. Viken Ship Mgmt.*, 450 F.3d 214, 218 (6th Cir. 2006) (citations and quotation marks omitted).

In the present Motion, Defendants have attached the affidavit of Tayloe, wherein he avers, among other things, that he has "no connection to the Commonwealth of Kentucky. I am a California resident and I have never…set foot in Kentucky. I do not own any property in Kentucky, I do not do business in Kentucky, and I have no documents or other materials relevant to this action in Kentucky." [DN 11-1, at 2.] Tayloe further avers that SCG "has no connection with Kentucky," that SCG "is a corporation organized and existing under the laws of…California, with its principal place of business in California," that SCG "is not registered to do business in Kentucky and in fact does no business in Kentucky. It neither owns nor leases any

6

property in Kentucky, has no employees nor agents in Kentucky, and maintains no documents in Kentucky." [*Id.*] Finally, Tayloe avers that SCG "does not purposely direct any communications to residents of Kentucky." [*Id.*]

To rebut this, High Adventure attached to its Response the affidavit of Rex Nichols, ("Nichols"). [DN 14-4.] Therein, Nichols avers that he has been affiliated with High Adventure for many years and has "been a frequent financial contributor as well as an advisor" to the company. [*Id.* at 2.] Also, Nichols avers that he has been a Kentucky resident for many years, that he has known Tayloe for some time and that "Tayloe was aware that I lived in Kentucky." [*Id.*] Next, he avers that, "[b]ased on my past association with Mr. Tayloe, I feel certain that Mr. Tayloe knew I was a key financial contributor to High Adventure…." [*Id.*] Finally, Nichols avers that, "[i]n September 2016, I had several telephone conversations with John Tayloe from Louisville, Kentucky, concerning Mr. Tayloe's ministry," and that Tayloe "specifically solicited me for a contribution of 1.1 million dollars for his activities, and asked that I join him in promoting his competing ministry." [*Id.*] High Adventure argues that these alleged specific and purposeful contacts with Nichols constitute "overt actions connecting the defendant[s] [Tayloe and SCG] with the forum state [Kentucky]." *See Fortis Corp. Ins.*, 450 F.3d at 218.

In their Reply, Defendants argue that it was Nichols, and not Tayloe, who initiated the contact between the pair. [DN 16, at 5.] According to Defendants, "the two knew each other but had not had contact in many years, when Mr. Nichols called Rev. Tayloe claiming to be excited about [SCG's] project. Mr. Nichols requested a project proposal, which Rev. Tayloe transmitted by email, whereupon Mr. Nichol's enthusiasm cooled substantially, and Rev. Tayloe had difficulty contacting Mr. Nichols." [*Id.*] Moreover, when Tayloe allegedly "received a 'cease and desist' letter from [High Adventure], Rev. Tayloe concluded that Mr. Nichols's call had simply

7

been a ruse to obtain information for" High Adventure. [*Id.*] Tayloe claims in Defendants' Reply that he did not even know that Nichols lived in Kentucky. [*Id.*]

Thus, the question becomes whether this interaction between Nichols and Tayloe indicates that Defendants "purposefully avail[ed] [themselves] of the privilege of acting in the forum state or causing a consequence in the forum state," as required by the first prong of *Beydoun*, 768 F.3d at 505. "A single act may meet the purposeful availment requirement." *Youn v. Track, Inc.*, 324 F.3d 409, 419 (6th Cir. 2003) (citing *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957) and explaining the Supreme Court's "finding that a single contact, entered into by mail with a forum state resident, could meet the minimum contacts test for suit on the contract."). However, it still must be that the defendant's activity "should provide fair warning that he may have to defend a lawsuit there." *Id.*

It is not insignificant that Tayloe did not initiate contact with Nichols. Indeed, "the Sixth Circuit has held that the purposeful availment prong is not satisfied where a resident of the forum state, not the nonresident defendant, initiates the communications." *Gallagher v. E.W. Scripps Co.*, No. 08-2153-STA, 2008 WL 5120902, at *3 (W.D. Tenn. Dec. 4, 2008) (citing *Harris v. Lloyds TSB Bank, PLC*, 281 F. App'x 489 (6th Cir. 2008) for the "finding [of] no specific jurisdiction where nonresident received but did not initiate multiple wire transfers from forum state;" *Rice v. Karsch*, 154 F. App'x 454, 460-61 (6th Cir. 2005) for the "finding [of] no specific jurisdiction where nonresident responded by mail and e-mail to communication initiated in forum state;" and *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 723 (6th Cir. 2000) for the "finding [of] no specific jurisdiction where nonresident conducted telephone, fax, and email correspondence with resident corporation.").

In neither Nichols' affidavit nor in High Adventure's Response to the instant Motion does the company allege, aver, or otherwise show that Tayloe, and not Nichols, initiated the contact between the parties. Specifically, Nichols' affidavit states the following: "I had several telephone conversations with John Tayloe…concerning Mr. Tayloe's ministry," and that Tayloe "solicited me for a contribution of 1.1 million dollars for his activities, and asked that I join with him in promoting his competing ministry." [DN 14-4. at 2.] Nowhere in the affidavit does Nichols aver that Tayloe called him first, emailed him first, or mailed him an unsolicited letter. Additionally, High Adventure does not set forth any other specific facts regarding Tayloe's or SCG's alleged involvement with the forum state: Kentucky.

Whether feigning interest in order to gather information for High Adventure or out of a genuine interest in donating to Tayloe and SCG, the only evidence presented to the Court concerning the sequence of interactions between the two men comes from Tayloe's affidavit, wherein he specifically avers that Nichols "called me unsolicited and asked for information about my project" in May of 2016. [DN 16-1, at 2.] Tayloe further avers he found his "exchange with Mr. Nichols strange at the time for more than one reason. First, the contact seemed to come 'out of the blue' because" Tayloe "has not had any contact with him since" the 1990s. [*Id.*] Moreover, when Nichols initiated contact, he "asked [Tayloe] for information, and was enthusiastic about providing financial support, but immediately became hard to reach." [*Id.*] This Court views the interactions between these two men as the "result of random, fortuitous, or attenuated contacts," thus falling outside the realm of purposeful availment. *See Kerry Steel*, 106 F.3d at 150 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). In *Kerry Steel*, the Sixth Circuit Court of Appeals differentiated between purposeful availment of the kind that would confer upon a court specific jurisdiction over a nonresident defendant and the kinds of

9

"one-shot transaction[s]" where the plaintiff initiates contact with the defendant that do not give rise to ongoing obligations. *Id.* at 150-51.

In its Response, High Adventure alleges that "Tayloe absconded[2] with donors lists upon his firing [from the company] and has specifically aimed his solicitation activities toward the traditional benefactors and supporters of High Adventure…." [DN 14, at 8.] High Adventure's usage of "benefactors and supporters" in the plural form would appear to indicate that, in its view, Tayloe has either contacted or been contacted by more people than just Nichols. However, no other examples are given, and no other affidavits are attached tending to show that Tayloe's connection to the state of Kentucky results from anything more than Nichols' contacting him. *See Bradley v. Mayo Found.*, No. Civ. A. 97-204, 1999 WL 1032806, at *8 (E.D. Ky. Aug. 10, 1999) (finding that "four letters, [and a] telephone call" were insufficient to establish personal jurisdiction over a nonresident doctor where "[t]he plaintiff…initiated contact with the Mayo Clinic unilaterally….").

Accordingly, the Court finds that this falls short of establishing a "substantial connection with the forum state" such that Defendants would "reasonably anticipate being haled into court" in Kentucky, as contemplated by the Sixth Circuit Court of Appeals in *Beydoun*, 768 F.3d at 505-06. Finally, in his second affidavit, Tayloe also avers that, if "Nichols was located in Kentucky at the time of th[e] communications, I was not aware of that, and at no time did he give me a physical address. I believe the last time I knew where he lived, he was living in Texas." [DN 16-1, at 3.] It appears uncontested that Nichols was residing in Kentucky at the time of the pair's communications in September 2016, but it now appears as though there is some dispute as to whether Tayloe even knew *where* Nichols lived when Nichols contacted him in the first place.

---

[2] Even assuming that Tayloe absconded with such lists, and that he did so at the time of his third and final termination from the company in 1999, that was still two years before High Adventure relocated its corporate headquarters from California to Kentucky in 2001.

The second prong requires that "the cause of action…arise from the defendant's activities" in the forum state, here Kentucky. *See Beydoun*, 768 F.3d at 505. "If a defendant's contacts with the forum state are related to the operative facts of the controversy, then an action will be deemed to have arisen from those contacts." *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1267 (6th Cir. 1996) (citing *Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1119 (6th Cir. 1994)). Stated differently, "the plaintiff must demonstrate a causal nexus between the defendant's contacts with the forum state and the plaintiff's alleged cause of action." *Beydoun*, 768 F.3d at 506-07 (citing *Burger King Corp.*, 471 U.S. at 474). Here, Defendants' "activities" in Kentucky consist, according to the parties' briefs, of the contact Tayloe had with Nichols in 2016. [*See* DN 14-4, at 2.]

Defendants argue that, under this standard, the second prong cannot be met because, according to Tayloe's affidavit, neither he nor SCG do any business in the state of Kentucky. [*See* DN 16, at 7; *see also* Tayloe Affidavit One, DN 11-1; Tayloe Affidavit Two, DN 16-1.] Further, Defendants argue that High Adventure did not actually suffer any injury or damage from the lone contact to which the company points in support of its argument that this Court has personal jurisdiction: Tayloe's correspondence with Nichols. [DN 16, at 7.] Indeed, in Tayloe's second affidavit, he avers that "Nichols never donated any money to [SCG]." [DN 16-1, at 2.]

High Adventure's claims in this case are for: false advertising, misappropriation of trade secrets, federal unfair competition, common law unfair competition and trademark claims, trademark infringement, trademark dilution, a declaratory judgment, and a civil RICO Act claim. [DN 1, at 10-23.] The Court cannot say that High Adventure's "cause[s] of action…[were] proximately caused by the defendant[s'] contacts with the forum state." *Beydoun*, 768 F.3d at 507-08. High Adventure's claims for false advertising and unfair competition stem from

11

Defendants' use of a website and the term "voice or hope," which, in High Adventure's view, misleads the public and potential donors into believing a connection exists between Defendants and High Adventure. [DN 1, at 10-15.] High Adventure *does* mention its donor list in its misappropriation of trade secrets claim, although it does not allege that Nichols was on that list nor does it allege that Tayloe obtained Nichols' name or contact information from that list. [*Id.* at 12-13.] High Adventure's trademark infringement and dilution claims do not relate directly to any alleged solicitations made by Tayloe, and do not name Nichols either. [*Id.* at 16-18.] High Adventure's claim for a declaratory judgment points again to Defendants' allegedly improper use of the "voice of hope" name in connection with its business. [*Id.* at 19.] Finally, while High Adventure's civil RICO Act claim *does* mention Defendants' allegedly improper solicitation of former High Adventure donors, the Complaint does not provide any specific allegations concerning the names and/or residencies of these individuals, instead merely alleging misrepresentations by Defendants "domestically and abroad," while focusing in particular on contacts Defendants allegedly had with individuals in Israel. [*See id.* at 20-23.]

The "operative facts of the controversy" relate, for the most part, to trademark and misappropriation issues concerning Defendants' allegedly improper use of the "voice of hope" phrase. To be sure, High Adventure's claims touch on Tayloe's alleged solicitation of either current or former High Adventure donors (and improperly taking lists containing donor names), but none of these individuals are named, nor are their residencies; therefore, the Court has nothing in the way of evidence that any of the alleged harms done to High Adventure were proximately caused by actions taken by Defendants directed at Kentucky. Indeed, as the Court noted above, Nichols reached out to Tayloe, not the other way around, and no donation was ever made. [*See* DN 16-1, at 2-3.] At best then, some of High Adventure's claims may be tangentially

related to Tayloe's contact with Nichols in September 2016, but the connection remains insufficient to satisfy this second prong.

The third prong asks whether "the acts of the defendant or consequences caused by the defendant…have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *See Beydoun*, 768 F.3d at 505. In reaching a decision on this third prong, courts should ask whether exercising specific personal jurisdiction over the defendant would "comport with 'traditional notions of fair play and substantial justice.'" *Reynolds*, 23 F.3d at 1117 (quoting *Asahi Metal Indus. Co., Ltd. v. Superior Court of California, Solano Cnty.*, 480 U.S. 102, 113 (1987)). Importantly, where the first two prongs are satisfied, "an inference arises that this third [prong] is also present." *CompuServe*, 89 F.3d at 1268 (citing *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1170 (6th Cir. 1988)). "A court must consider several factors in this context, including the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, and the interest of other states in securing the most efficient resolution of controversies." *Id.* (internal citations omitted).

In the present case, the Court finds that the burden placed upon Defendants would be great, as both Tayloe and SCG are California residents and this action has been brought in the Western District of Kentucky, where High Adventure has its corporate headquarters. The Western District of Kentucky clearly has some interest in the present case, as the Plaintiff is a resident of the Commonwealth, but the same could be said of California. And the Court cannot say that allowing the case to proceed in this forum would or could provide a more efficient resolution to the underlying claims High Adventure has brought against Defendants. Moreover, "even assuming, *arguendo*, that [High Adventure's] interest in obtaining relief counsels in favor of a finding of reasonableness" under the third prong, "the other two factors weigh heavily

against such a finding." *See Beydoun*, 768 F.3d at 508. Finally, the Court notes that, in its Response, High Adventure does not point to any interest this forum has in adjudicating this matter, why that interest is greater than any other forum, or the relative burdens on High Adventure or Defendants by adjudicating this matter in Kentucky.

The second argument advanced by High Adventure in its Complaint relates to its civil RICO Act[3] claim under 18 U.S.C. § 1961. It is High Adventure's assertion that, because this action contains such a claim, this alone provides the basis for personal jurisdiction over Defendants, irrespective of the traditional analyses for general and specific jurisdiction. In support of this contention, it cites to 18 U.S.C. § 1965, which provides, in pertinent part, as follows:

> (a) Any civil action or proceeding under this chapter against any person may be instituted in the district court of the United States for any district in which such person resides, is found, has an agent, or transacts his affairs.
>
> (b) In any action under section 1964 of this chapter in any district court of the United States in which it is shown that the ends of justice require that other parties residing in any other district be brought before the court, the court may cause such parties to be summoned, and process for that purpose may be served in any judicial district of the United States by the marshal thereof.
>
> (c) …
>
> (d) All other process in any action or proceeding under this chapter may be served on any person in any judicial district in which such person resides, is found, has an agent, or transacts his affairs.

18 U.S.C. § 1965(a)-(b), (d).

In essence, High Adventure alleges that "[a]ll that is required is for [High Adventure] to show that at least one defendant 'resides, is found, has an agent, or transacts his affairs' in the district, that the nonresident defendant has minimum contacts with the United States, and that

---
[3] "RICO Act" is in reference to the Racketeer Influenced and Corrupt Organizations Act. The substantive components of the RICO Act are not material to the Court's present analysis regarding personal jurisdiction and so no explanation is needed here.

'the ends of justice' require the exercise of personal jurisdiction over the nonresident." [DN 14, at 6 (quoting 18 U.S.C. § 1965).] In response, Defendants argue that "[t]he RICO statute does not provide nationwide jurisdiction over any defendant that a plaintiff names, contrary to [High Adventure's] argument." [DN 16, at 8.]

District courts within the Sixth Circuit have weighed in on the question of the breadth of the RICO nationwide service provision in different ways. For example, in 2007 this Court stated that "RICO allows nationwide service of process even over defendants with no contacts to the forum 'when it is shown that the ends of justice require it' so long as appropriate national contacts exist." *Kattula v. Jade*, No. 5:07-cv-52-TBR, 2007 WL 1695669, at *2 (W.D. Ky. Jun. 8, 2007) (quoting *Iron Workers Local Union No. 17 Ins. Fund v. Phillip Morris, Inc.*, 23 F. Supp. 2d 796, 803 (N.D. Ohio 1996)). This means that "[i]f nationwide service of process applies, the Plaintiff[] need only show that the Defendants maintained minimum contacts with the United States as a whole, not just within Kentucky." *Id.* (citing *Iron Workers*, 23 F. Supp. 2d at 803). "In deciding when the 'ends of justice require' national service, courts are to consider the legislative history of RICO. Courts have found that Congress intended the 'ends of justice' language to provide a means for 'plaintiffs to bring all members of a nationwide RICO conspiracy before the court in a single trial." *Iron Workers*, 23 F. Supp. 2d at 803 (citing *Butcher's Union Local No. 498 v. SDC Invest., Inc.*, 788 F.2d 535, 539 (9th Cir. 1986)).

However, another district court in the Western District of Kentucky, citing *Kattula* and *Iron Workers*, as well as *800537 Ontario, Inc. v. Auto Enters., Inc.*, 113 F. Supp. 2d 1116 (E.D. Mich. 2000), stated that "[t]he Sixth Circuit has not yet spoken concerning the breadth of the RICO nationwide service provision," and chose instead to "rely upon a traditional minimum contacts analysis, consistent with the allegations of the complaint and established law to find

personal jurisdiction over" the defendant. *See Kerman v. Chenery Assocs., Inc.*, No. 3:06-cv-338-S, 2007 WL 2363283, at *1 n.1 (W.D. Ky. Aug. 14, 2007). As of the date of entry of this Memorandum Opinion and Order, it does not appear that the Sixth Circuit Court of Appeals has specifically answered this question.

However, even assuming that one or both Defendants have transacted affairs in the Western District of Kentucky, 18 U.S.C. § 1965(d), this Court finds that "the ends of justice" do not require this Court to exercise personal jurisdiction under the specific factual circumstances of this case. As this Court explained in *Kattula*, "[p]laintiffs bear the burden of showing that the ends of justice require the exercise of nationwide service of process for personal jurisdiction purposes." No. 5:07-cv-52, 2007 WL 1695669, at *3 (citing *Southmark Prime Plus, L.P. v. Falzone*, 768 F. Supp. 487, 490 (D. Del. 1991)). Further, "courts have declined to exercise personal jurisdiction under the nationwide service of process available for RICO claims 'if there is a district where venue is proper as to every RICO defendant, without resort to [§ 1965]." *Id.* (quoting *Falzone*, 768 F. Supp. at 490, *Anchor Glass Container Corp. v. Stand Energy Corp.*, 711 F. Supp. 325, 331 (S.D. Miss. 1989)).

In short, the Court finds that "the ends of justice" do not warrant utilizing the RICO jurisdictional provision to hale two individual defendants across the country to a venue already deemed improper under the traditional specific jurisdiction analysis, explained above, especially considering the fact that venue would presumably be proper for both Defendants elsewhere. In its Response to the instant Motion, High Adventure, in arguing that the ends of justice require this Court to exercise personal jurisdiction over Defendants, states the following: "[i]n a RICO action, the 'ends of justice' require nationwide service of process to further the congressional intent of allowing 'plaintiffs to bring all members of a nationwide [] conspiracy before a court in

a single trial.'" [DN 14, at 6 (quoting *Butcher's Union*, 788 F.2d at 539).] However, the language from *Butchers Union* explicitly refers to a "nationwide [] conspiracy." *Id.* Here, there are allegations against a single individual, John Tayloe, and SCG, the company of which he is Chief Executive Officer and a co-founder. [*See* DN 11-1, at 1.] There are no overly complicated jurisdictional issues concerning numerous defendants across multiple states or countries such that this Court would consider utilizing the RICO jurisdictional provision to bring these two Defendants to Kentucky to stand trial. Accordingly, the Court rejects High Adventure's RICO jurisdiction argument under these facts.

### 2. Service of Process

The other component of Defendants' Motion to dismiss the action against them concerns what they characterize to have been insufficient service of process. However, as the Court has determined that it does not possess personal jurisdiction over Defendants, the Court need not reach the issue of service of process.

### C. Conclusion

For the reasons stated in this Opinion, **IT IS HEREBY ORDERED** that Defendants' Motion to dismiss, [DN 11], is **GRANTED.** All of High Adventure's claims against Defendants are **DISMISSED.**

**IT IS SO ORDERED.**


cc:     Counsel of Record